IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COLLECTIONS FINE JEWELRY, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-3230-N |
| | § | |
| STANLEY CONVERGENT SECURITY SOLUTIONS, INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER

This Order addresses Defendant Stanley Convergent Security Solutions, Inc.'s ("Stanley") motion to dismiss [4]. The Court denies the motion for the reasons discussed below.

### I. ORIGINS OF THE MOTION TO DISMISS

As the Court must, it accepts the well-pled facts as true and in the light most favorable to Plaintiff Collections Fine Jewelry, Inc. ("Collections"). Collections is a jewelry store in Saginaw, Texas. Stanley provided and serviced Collections's commercial alarm system pursuant to a written agreement (the "Contract").[1] Stanley provided Collections with a Mercantile Burglar Alarm System Certificate (the "Certificate") that certified, warranted, and represented that the alarm system was entitled to be described as UL listed and met UL

---

[1] The parties agree that Stanley assumed Honeywell's rights and obligations under the contract. *See* Stanley's Br. Supp. Mot. 7 n.1 [5]; Collections's Br. Supp. Resp. 8 [8]. Thus, the Court will refer to Stanley in place of Honeywell where necessary.

ORDER – PAGE 1

listing requirements.[2] One such requirement was apparently that the alarm system include a two-way radio back-up alarm system programmed to send signals to a central station receiver over set intervals, usually ranging between three to six minutes. The Certificate was valid during October 2009.

While Collections was closed on Saturday, October 31, 2009 it experienced a power failure. Thereafter, a Stanley technician informed Collections that the alarm's back-up battery had failed but that the alarm system was still operational. Based on this information, Collections scheduled the repair work on the back-up battery for the following business day, Monday, November 2, 2009. However, while Collections was still closed on Sunday, November 1, 2009, unknown persons burglarized it. Upon later investigation, the police concluded that the burglars intentionally cut Collections's power on October 31, 2011, waited twenty-four hours to make sure the alarm system did not send a back-up signal that prompted police intervention, and upon no police presence or repair work by Stanley, returned to crack the jewelry safes and steal the goods.[3]

Collections brought the instant suit against Stanley alleging that it misrepresented to it that the alarm system was entitled to be described as UL listed and met UL listing requirements because the alarm was scheduled to send a back-up signal to Stanley every six

---

[2]The record is silent on what is required for UL listing/certification.

[3]While Collections was still closed the morning of Monday, November 2, 2009, the back-up system sent some type of signal to Stanley. Thereafter, Stanley called Collections to again report a back-up battery failure. At no time did Stanley contact the police department.

ORDER – PAGE 2

hours instead of every three to six minutes. Collections specifically alleges that Stanley violated the Texas Deceptive Trade Practices Act ("DTPA"), engaged in negligent misrepresentation, was negligent and grossly negligent, committed fraud, breached their contract, and participated in a civil conspiracy to allow or facilitate the above unlawful acts. Stanley now moves to dismiss Collections's petition.

## II. RULE 12(B)(6) STANDARD

When considering a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). According to the Supreme Court, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face" – i.e., "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

As the Supreme Court observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true,

> we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.* at 556. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  [*Iqbal v. Hasty*,] 490 F.3d 143, 157-158 [(2d Cir. 2007)].  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).
>
> In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 129 S. Ct. at 1949-50.

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff.  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  However, a court may also consider certain documents outside of the pleadings if they fall within four limited categories.  First, "[a] court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).  Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding."  *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780

ORDER – PAGE 4

(5th Cir.2007) (citation omitted). In addition, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'"[4] *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). And finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "[t]he district court took appropriate judicial notice of publically available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### III. COLLECTIONS STATES A DTPA CLAIM

The DTPA grants consumers a cause of action for damages caused by, among other things, false, misleading, or deceptive acts or practices. *See* TEX. BUS. & COM. CODE § 17.50(a). To allege a DTPA claim, a consumer must plead that the defendant violated a specific provision of the DTPA, that the consumer detrimentally relied on the said act or practice, and that the violation was a producing cause of the consumer's injury. *See id.*

Stanley argues that the Court should dismiss Collections's DTPA claim because it is merely a recast of its breach of contract claim. Indeed, "[a]n allegation of a mere breach of

---

[4]In this case, that includes the contract between Collections and Honeywell, Inc., Stanley's predecessor in interest.

contract, without more, does not constitute a false, misleading or deceptive act in violation of the DTPA." *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex. 1996) (quoting *Ashford Dev., Inc. v. USLife Real Estate Servs. Corp.*, 661 S.W.2d 933, 935 (Tex. 1983)); *see also Helms v. Sw. Bell Tel. Co.*, 794 F.2d 188, 191 (5th Cir. 1986) (dismissing DTPA claim arising out of errors in published yellow pages ad because alleged misrepresentation was nothing more than defendant's failure to perform its promise to correctly print advertisement). In *Crawford*, the Court explained that "a plaintiff may not maintain a breach of contract action and a DTPA claim concurrently when 'both the source of the defendant's duty to act . . . and the nature of the remedy sought by the plaintiff' are identical." *Nat'l Ctr. for Policy Analysis v. Fiscal Assocs., Inc.*, 2002 WL 433038, at *7 (N.D. Tex. 2002) (Lindsay, J.). "[R]epresentations that one will fulfill a contractual duty which one later fails to perform does not constitute misrepresentation, but rather the breach of a contractual duty." *Metro. Life Ins. Co. v. Haden & Co.*, 158 F.3d 584, at *7 (5th Cir. 1998) (unpub.) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998)).

But, where a plaintiff alleges that the defendant represented that he or she would provide a certain good or service and the defendant then fails to provide that good or service, the plaintiff successfully alleges more than a mere breach of contract claim. *See, e.g.*, *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 305 (Tex. 2006) ("[W]hile the failure to deliver [the good] would not alone violate the DTPA, [plaintiff's] claim was that [defendant] represented [that plaintiff] would get one model when in fact she was going to get another.

While failure to comply would violate only the contract, the initial misrepresentation violates the DTPA." (internal footnotes omitted)); TEX. BUS. & COM. CODE § 17.46(b)(7) (defining a "false, misleading, or deceptive act[] or practice" under the DTPA as inter alia "representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another").

Here, Collections successfully alleges something more than a breach of contract claim. Collections alleges that Stanley violated the DTPA by: (1) misrepresenting that the alarm met UL listing specifications and would perform accordingly, (2) misrepresenting that the alarm signal Stanley received was a back-up battery failure rather than an alarm result, (3) misrepresenting that the alarm system was operational when it was not, and (4) breaching an implied warranty of good and workmanlike performance of services. *See* Pet. 2-5 [1-1]. Of these, at least (1) and (3) are misrepresentations about a product – a classic DTPA claim – rather than a mere failure to perform – a classic breach of contract claim. Thus, Stanley's argument is unavailing.

Stanley next argues that allegations (2) and (3) are improper DTPA allegations because Stanley made the alleges misrepresentations "*after* [Collections] entered into the Contract with Stanley." Stanley's Br. Supp. Mot. 10. It argues that "post-transaction representations and conduct are generally not actionable under the DTPA" because "such representations generally could not have injured or adversely affected the plaintiff." *Id.* However, Stanley's argument is misplaced. Here, Collections does not allege solely that it was injured because it entered into and/or renewed its contract with Stanley. Rather, the

ORDER – PAGE 7

main thrust of Collections's petition is that it was injured by its loss of goods. Thus, the Court declines to dismiss Collections's DTPA claim on this ground. Accordingly, because Stanley's arguments against Collections's DTPA claim fail, the court declines to dismiss it.[5]

### IV. THE ECONOMIC LOSS RULE DOES NOT BAR COLLECTIONS'S TORT CLAIMS

Stanley next argues that the economic loss rule bars Collections's tort claims. Specifically, it argues that Collections's only alleged injury is the loss of its jewelry stock via the burglary: "Collections made no allegation or claim for personal injury or extra-contractual property damage." Stanley's Br. Supp. Mot. 11.

In Texas, the economic loss rule acts to bar tort claims for damages where the plaintiff solely bases his damage request on the subject of the contract. *See S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 538 (5th Cir. 2003) ("[I]f damages arise solely from the loss of the contract benefit, the claim sounds only in contract. Other damages, such as property damage or personal injury, can be recovered in tort." (internal citations omitted)); *Cf. Montgomery Ward & Co. v. Scharrenbeck*, 204 S.W.2d 508 (Tex. 1947) (holding that where defendant negligently repaired plaintiff's water heater, which later caused a fire that destroyed plaintiff's house, plaintiff could recover under tort theory).

---

[5]Although the Court does not dismiss Collections's DTPA claim, it does note that the allegation that Stanley breached an implied warranty of good and workmanlike performance is not actionable under the DTPA. The Texas Supreme Court has stated that an implied warranty that a defendant will perform services in a good and workmanlike manner does not arise under the common law where other adequate remedies are available to the consumer. *See Rocky Mountain Helicopters, Inc. v. Lubbock Cnty. Hosp. Dist.*, 987 S.W.2d 50, 53 (Tex. 1998). Here, contract remedies are available. Thus, Collections cannot succeed on a DTPA claim based on an implied warranty of good and workmanlike service, and it must instead rely upon its misrepresentation arguments to succeed on this claim.

Here, Collections seeks damages for its stolen jewelry, lost business income, lost profits, and paying consignment and repair customers for their lost property. *See* Pet. 7. This goes far beyond the scope of the subject of the contract – the monitoring and maintenance of an alarm device. Thus, the Court declines to dismiss Collections's tort claims on this ground.

## V. COLLECTIONS PLEADS FRAUD WITH PARTICULARITY

Stanley objects to Collections's fraud claim on Rule 9(b) grounds. Rule 9(b) of the Federal Rules of Civil Procedure requires parties to state their allegations of fraud with particularity. FED. R. CIV. P. 9(b). "Pleading fraud with particularity in [the Fifth] [C]ircuit requires 'time, place[,] and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (last alteration in original) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). In essence, Rule 9(b) requires a party to state "the who, what, when, where, and how." *Id.* at 179. "What constitutes 'particularity' will necessarily differ with the facts of each case." *Id.* (quoting *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992)).

Reading the petition in the light most favorable to Collections, the Court finds that Collections pleaded fraud with the requisite particularity. First, Collections alleges that, upon Stanley providing Collections the Certificate, Stanley represented that the alarm met UL listing specifications and would perform accordingly to induce Collections to utilize Stanley's services. *See* Pet. 2, 5. Second, Collections alleges that on November 1, 2009, a

Stanley employee misrepresented to Collections that the alarm response triggered by the power loss was a back-up battery failure rather than an alarm result and that the alarm system was operational when it was not, purportedly because Stanley, through its employees, agents, or representatives, may have facilitated the burglary. *See id.* at 3, 5. Finally, Collections alleges that a Stanley employee called Collections's General Manager on November 2, 2009 and misrepresented that the alarm response triggered by the burglary was related to the back-up battery issue, again because of Stanley's alleged connection to the burglary. *See id.* at 4-5. These allegations suffice to plead fraud with particularity, so the Court declines to dismiss Collections's fraud claim.

### VI. COLLECTIONS STATES A CIVIL CONSPIRACY CLAIM

Stanley next argues that the Court must dismiss Collections's conspiracy claim because it is not based on an underlying tort. Stanley is correct that a defendant cannot be liable for conspiracy unless someone in the alleged conspiracy commits an underlying tort. *See Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). Additionally, that underlying tort must be intentional. *See Firestone Steel Prods. v. Barajas*, 927 S.W.2d 608, 617 (Tex. 1996). Because Collections's fraud claim survives, Collections has met this underlying intentional tort requirement. Accordingly, the Court declines to dismiss Collections's conspiracy claim.

### VII. THE COURT DOES NOT DISMISS CLAIMS FOR DAMAGES IN EXCESS OF THE CONTRACT'S LIABILITY LIMITATION PROVISION

Lastly, Stanley argues that the Court should dismiss any portion of Collections's claims that seeks damages exceeding $1,020.00, the amount stated in the Contract's limitation of liability provision. This is incorrect. "Texas courts have held that a party cannot prospectively insulate itself contractually from liability for intentional torts." *Budner v. Wellness Int'l Network, Ltd.*, 2007 WL 806642, at *8 (N.D. Tex. 2007) (Kinkeade, J.) (citing Texas authorities). Further, the limitation of liability provision does not militate toward dismissal of substantive claims, but rather functions only to limit Collections's recovery. Thus, the Court declines to dismiss Collections's claims that seek damages in excess of the amount specified in the Contract's limitation of liability provision.

## CONCLUSION

Collections has stated claims upon which the Court may grant relief and has pled fraud in compliance with Rule 9(b). Accordingly, the Court denies Stanley's motion to dismiss.

Signed August 29, 2012.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 11